**Carroll E. FELDPAUSCH,**
**Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services,**
**Defendant-Appellee.**

**No. 84–5357.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 19, 1985.

Decided June 7, 1985.

Alvin D. Wax (argued), Stanley W. Whetzel, Jr., Louisville, Ky., for plaintiff-appellant.

Ronald E. Meredith, U.S. Atty., Hancy Jones, III, James H. Barr, Christine Bradfield (argued), Louisville, Ky., for defendant-appellee.

Before ENGEL and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Appellant Carroll Feldpausch appeals from an order of the United States District Court for the Western District of Kentucky overruling his motion for an award of attorney fees pursuant to 28 U.S.C. § 2412(d)(1)(A). Feldpausch brought suit in the district court to challenge the final determination of the Secretary of Health and Human Services ("Secretary") terminating his disability insurance benefits. On November 21, 1983, the district court sustained Feldpausch's motion for summary judgment. No appeal was taken by the Secretary.[1] On January 24, 1984, 64 days after judgment, Feldpausch moved for an

---

**1.** Under Fed.R.App.P. 4(a)(1), the Secretary had to file a notice of appeal within 60 days of the date of entry of the district court judgment.

award of attorney fees under 28 U.S.C. § 2412(d)(1)(A), the Equal Access to Justice Act ("EAJA"), Pub.L. No. 96–481, 94 Stat. 2325 (1980).[2] The district court overruled the motion as untimely under 28 U.S.C. § 2412(d)(1)(B) because it was filed more than 30 days after the "final and appealable judgment" of November 21, 1983.

The EAJA provides for an award of costs and fees to certain prevailing parties in actions by or against the United States unless the position of the United States was substantially justified. 28 U.S.C. § 2412(d)(1)(A).[3] Section 2412(d)(1)(B) provides in relevant part:

> A party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action,* submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection .... (Emphasis added).

The sole issue on appeal is whether Feldpausch's application for attorney fees, filed more than 30 days after the district court's judgment but within 30 days of the expiration of the time to appeal, was timely filed. Resolution of this issue requires a determination of the meaning of "final judgment" as used in § 2412(d)(1)(B).

██ The district court determined that Feldpausch needed to file his application within 30 days of the November 21, 1983 judgment in order to meet the requirements of § 2412(d)(1)(B). Thus, the court concluded that Feldpausch's motion filed 64 days later was untimely. Implicit in the court's holding is the conclusion that its November 21, 1983 judgment fell within

the meaning of "final judgment" as that term is used in § 2412(d)(1)(B). The district court's interpretation of the meaning of "final judgment" is a conclusion of law, subject to *de novo* review upon appeal. *Foster v. Tourtellotte,* 704 F.2d 1109, 1111 (9th Cir.1983); *Spencer v. NLRB,* 712 F.2d 539, 563 (D.C.Cir.1983).

Numerous other circuits have addressed the question of whether a "final judgment" occurs when the district court enters an appealable order rather than when a party's right to appeal that order has lapsed. In *McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983), the Seventh Circuit held that an application for attorney fees under the EAJA was timely, even though filed more than 30 days after the district court rendered its final judgment, because the application was filed less than 30 days after appellate proceedings were completed. In *Taylor v. United States,* 749 F.2d 171 (3d Cir.1984), the Third Circuit adopted the *McDonald* approach. The D.C. Circuit has also expressly adopted the Seventh Circuit's analysis and holding, in *Massachusetts Union of Public Housing Tenants v. Pierce,* 755 F.2d 177, 180 (D.C.Cir.1985).[4] *See also Rawlins v. United States,* 686 F.2d 903, 914, 210 Ct.Cl. 672 (1982). The Ninth Circuit, however, in *McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983), held that the 30 day requirement of § 2412(d)(1)(B) referred to 30 days after the final judgment of the district court, not to 30 days after the expiration of the time to appeal. *See also Gold Kist, Inc. v. U.S. Dept. of Agriculture,* 741 F.2d 344 (11th

---

**2.** The EAJA expired on October 1, 1984, but continues to apply "through final disposition of any action commenced before the date of repeal." Pub.L. 96–481, § 204(c).

**3.** 28 U.S.C. § 2412(d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against

the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

**4.** In addition, three district courts have recently adopted the *McDonald* approach. *See Cox v. United States,* 593 F.Supp. 1238 (S.D.Fla.1984); *Keasler v. United States,* 585 F.Supp. 825 (E.D. Ark.1984); *Walton v. Lehman,* 570 F.Supp. 490 (E.D.Pa.1983).

Cir.1984); *Guthrie v. Schweiker*, 718 F.2d 104, 106 (4th Cir.1983).[5]

In *McQuiston*, the court reasoned that " 'final judgment' should be defined by its common usage in contexts such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a), and Fed. R.Civ.P. 54." The court concluded that "a request for attorneys' fees under subsection (d) is untimely if filed more than 30 days after the district court has entered judgment." *Id.* at 1085.

The Seventh Circuit, however, was unpersuaded by the "common usage" rationale of *McQuiston*. In *McDonald*, the court noted that the term "final judgment" does not actually appear in either 28 U.S.C. § 1291 or Fed.R.App.P. 4(a). The court further observed that "final judgment" does not have a single fixed meaning, but varies according to context. As an example, the court compared Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1291, in which finality refers to the pre-appellate proceedings, to "final judgment" in the Clayton Act, § 5(a), 15 U.S.C. § 16(a), which courts have constructed to mean when the time to appeal has run or the judgment has been affirmed by the court of last resort. *See, e.g., State of Illinois v. Sperry Rand Corp.*, 237 F.Supp. 520, 523 (N.D.Ill.1965); *Twin Ports Oil Co. v. Pure Oil Co., Inc.*, 26 F.Supp. 366, 368 (D.Minn.1939). The court in *McDonald*, however, based its conclusion upon the practical consequences of the position advanced by the government. Under the *McQuiston* approach, the court observed, the EAJA fee applicant may have to bear the cost of having to file multiple fee applications; the court stated that "it makes more sense, at least from the claimant's viewpoint, to be able to file a single application at the conclusion of all the proceedings...." *Id.* at 314. Further, the court, in observing that in many cases the prevailing party will actually seek fees within the 30 day period after the district court's entry of judgment, even when the case is appealed, stated: "In any event, giving the claimant a choice whether to ask for fees after he wins in the district court or after the appeal maximizes his welfare, at some cost perhaps to the courts but none we can think of to the executive branch." *Id.* at 34. Next, the court concluded that under the interpretation advanced by the government, the filing of completely meritorious fee applications could be discouraged because (as apparently admitted by the government in that case) the government would be more likely to pursue an appeal if the stakes have been increased by a fee application:

> Thus, if Mrs. McDonald's counsel had had to decide whether to apply for fees before the government had to decide whether to pursue the appeal, he would have faced an exquisite dilemma: forego any fee application and thereby preserve the wretched pittance that his client had wrung from the Social Security Administration only after bringing a review proceeding in a federal district court, or jeopardize her judgment in the hope of getting a reasonable fee for his work. The framers of the Equal Access to Justice Act could not have meant to create such a dilemma when they used the words 'final judgment' without in all likelihood considering what the words might mean in the setting of the present case. They wanted to make it easier, not harder, for people of limited means to collect their small claims from the government. *See* H.R.Rep. No. 1418, *supra*, at 18.

---

5. The Secretary contends that the case of *Monark Boat Co. v. N.L.R.B.*, 708 F.2d 1322 (8th Cir.1983), also supports her position. *Monark*, however, is clearly distinguishable because the issue in that case was whether the NLRB could interpret the requirements of 5 U.S.C. § 504(a)(2), that a party submit an attorney fee application to any agency within 30 days of a final disposition, to require receipt of the application, and not mere mailing, within 30 days. The NLRB had promulgated rules and regulations providing that the application must be filed 30 days after the entry of the Board's final order. 29 C.F.R. § 102.148(a). The Eighth Circuit upheld the NLRB's interpretation.

The Secretary also cites *Action on Smoking and Health v. C.A.B.*, 724 F.2d 211, 225 (D.C.Cir. 1984), as authority for the interpretation she advances. The D.C. Circuit, however, has recently found that the instant issue was not decided in *Action on Smoking and Health*. *Massachusetts Union of Public Housing Tenants*, 755 F.2d at 180.

*Id.* at 315. The court also observed that because the government had stated that it does not approve any actual payment of attorney fees until the completion of all proceedings, including appeals, there appears to be no reason for requiring fee applications prior to completion of the proceedings. Finally, the court in *McDonald* suggested that Congress could resolve the issue by shedding some light on its intent when considering reenactment of the EAJA upon its expiration on October 1, 1984.

■■■ We consider the reasoning of the Seventh Circuit in *McDonald* to be persuasive and we therefore hold that Feldpausch's application for attorney fees within 30 days of the expiration of the time to appeal was timely. We are further persuaded by the reasoning of the court in *Taylor*, 749 F.2d at 171. In determining that the term "final judgment" means final and not appealable, the Third Circuit in *Taylor* held that the plaintiff's request for attorney fees under the EAJA, filed within 30 days of the date when the government notified the plaintiff that no further appeal would be pursued, was timely. The court noted that Congress acted upon the suggestion made by the Seventh Circuit in *McDonald:*

> Congress has clarified the meaning of 'final judgment' for purposes of the EAJA, 28 U.S.C. § 2412(d)(1)(B), adopting the Seventh Circuit's *McDonald* approach. The original EAJA, Pub.L. 96–481, 94 Stat. 2327 (1980) expired on October 1, 1984. Two bills, S. 919 and H.R. 5479 were introduced in the respective houses of Congress to re-enact the EAJA. On October 4, 1984, the Senate approved H.R. 5479, which had adopted the language of S. 919 with minor revisions. Following a series of amendments in both houses. [sic] Congress approved a final version of H.R. 5479 on October 11, 1984. Although the President declined to sign the bill into law, we nonetheless find its language and legislative history to be instructive on the question of the meaning of 'final judgment' under the original EAJA.

The bill passed by Congress sought to clarify 28 U.S.C. § 2412(d)(2) by adding a series of definitional passages. New definition § 2412(d)(2)(G) reads: "'final judgment' means a judgment that is final and not appealable." The reasons for this clarification are made clear in the Report of the Senate Judiciary Committee accompanying S. 919, S.Rep. No. 98–586, 98th Congress, 2d Sess. 16 (1984). The Senate Report specifically considers the issue raised by Taylor and resolves this dispute between the Seventh and Ninth Circuits:

> G. *At what point a fee application must be filed to avoid dismissal*
>
> The issue was raised in the hearing as one in need of clarification. The question arises as to whether a 'final judgment' occurs when the court enters an appealable order or when a party's right to appeal that order has lapsed. This issue is important since the thirty-day deadline for filing the fee application is jurisdictional and cannot be waived.
>
> The Committee believes that the interpretation of the court in *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir.1983) regarding this issue is the correct one. There the court found that the plaintiff was entitled to file a fee application within 30 days of the Secretary's dismissal of this appeal. The EAJA did not require that the application be submitted within 30 days of the rendering of the district court decision.
>
> The EAJA allows a prevailing party to file a fee petition within 30 days of the final disposition of a case on the merits i.e. when a party's right to appeal the order has lapsed. (footnote omitted).

*Id.* at 173–74.

The Secretary argues that in interpreting language used in the EAJA, weight should not be given to the report of a Congressional Committee on a bill that the President refused to sign. The Secretary cites *Premachandra v. Mitts*, 753 F.2d 635, 642, n. 9 (8th Cir.1985), in which the court stated that "President Reagan's refusal to sign

H.R. 5479, the bill that the report accompanied, deprives this statement of authoritative content." While we are mindful that, as the court in *Premachandra* stated, "we need not give weight to such reports," we are also aware that we are not precluded from considering such reports. We agree with the approach taken in *Clifton v. Heckler*, 755 F.2d 1138, 1145, n. 15 (5th Cir.1985):

> Regardless of the President's veto of the bill, *see* 42 Cong.Q.Weekly Rep. 2964 (1984) (text of President's memorandum of disapproval), we find its legislative history instructive on the question of the intended nature of the thirty-day limitation under the original EAJA.

Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.